WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Edward Dobbertin; et. al; , | ) | No. CV 12-744-TUC-CRP |
| | ) | |
| Plaintiffs, | ) | **ORDER** |
| | ) | |
| vs. | ) | |
| | ) | |
| | ) | |
| Town of Patagonia; et. al., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

Plaintiffs filed this action in State court alleging violation of 42 U.S.C. §§ 1981, 1983, and state law claims of breach of contract, defamation, wrongful termination, and intentional infliction of emotional distress arising from Plaintiff Edward Dobbertin's termination from employment as the Town Marshal for the Town of Patagonia. (Doc. 1-3). Defendants removed this action based upon federal question jurisdiction. (Doc. 1). The Magistrate Judge has jurisdiction over this matter pursuant to the parties' consent. *See* 28 U.S.C. § 636(c).

Pending before the Court is Defendants' Motion for Summary Judgment ("MSJ") (Doc. 22), Plaintiffs' Response (Doc. 27), Defendants' Reply (Doc. 31), and Plaintiffs' Notice of Supplemental Authority (Doc. 34). The matter came on for oral argument on December 19, 2013. For the following reasons, the Court grants Defendants' Motion for Summary Judgment.

**FACTUAL BACKGROUND**

Under the Patagonia Town Code, the Town Council appoints the Town Marshal. (Defendants' Statement of Facts ("DSOF") (Doc. 23), Exh. 2). The Town Code provides that: "The marshal may be removed with or without cause, by the council, by simple majority vote of its members, unless the council has entered into a contract of employment with the marshal, in which event the marshal may be removed only in accordance with the terms of such contract and for good cause." (*Id.* ("Code §3-2-2")).

On October 12, 2006, Defendant Town of Patagonia ("Town") through Randy Heiss, Town Clerk/Treasurer, sent Plaintiff Edward Dobbertin ("Dobbertin") a conditional offer of employment as Town Marshal. (Plaintiffs' Statement of Facts ("PSOF") (Doc. 28), Exh. 1, p.1). On October 19, 2006, Dobbertin responded that he would accept the offer of employment subject to several conditions including that the Town "Council agrees that they will not exercise the 'at will' clause, without stated cause." (*Id.* at p.3). On this point, Dobbertin went on to state:

> I am hopeful that we can come to a mutually satisfying agreement. I believe that the 'at will' portion of the job classification can create a potentially harmful work environment. If I am not doing what I am supposed to be doing, or fail to achieve the goals and expectations of the Council, then they have cause to terminate my employment. All I am asking is that we all conduct the Town's business like the professions that I believe we are.

(*Id.*).

On October 31, 2006, Heiss sent Dobbertin a "Response to Conditional Offer of Employment/ Formal Offer of Employment", responding to Dobbertin's proposed conditions of employment. (*Id.* at pp. 4-5) In pertinent part, Heiss stated that:

> "The Town...agrees that, after successful completion of the standard six-month probationary period, you will not be considered an "at will" employee and may only be terminated for stated cause. The Town also agrees that we will make every attempt to resolve any issues or concerns within the scope of your duties as Town Marshal, through professional, solution oriented dialogue, and in accordance with the Town's personnel policy guidelines.

(*Id.* at p.5).

The events leading to Dobbertin's termination began when the Patagonia Police Department arrested Alan Woods and filed charges against him in September 2009 for,

1  among other things, aggravated assault with a deadly weapon on Patagonia peace officer
2  Dale Stevenson. According to documents filed by the State in the Woods case, these charges
3  were primarily premised on a verbal report of the incident that Dobbertin gave to the Chief
4  Criminal Deputy of the Santa Cruz County Attorney's Office, which culminated in a criminal
5  complaint sworn to by Dobbertin. (DSOF, Exh. 3 (State's Response to Defendant Woods'
6  Motion to Vacate Judgment, pp.4-5) ("Dobbertin signed a complaint and swore it in
7  affirming...Stevenson's status as a peace officer....Dobbertin, who was responsible for
8  [Stevenson's] hire and certification...held him out to be a peace officer")). Woods was
9  convicted of the offense. (*Id.* at p.3). However, the defense later filed a motion to vacate
10 judgment, which the State did not oppose, based on newly discovered evidence that
11 Stevenson was not a bona fide peace officer at the time of Woods' arrest. (*Id.* at pp.1-7).
12 The Santa Cruz County Attorney's investigation of the issue revealed that when Dobbertin
13 appointed Stevenson as a peace officer and issued him a gun and badge, Stevenson was not
14 certified with the Arizona Peace Officers Standards and Training Board ("AZPOST"), as his
15 certification had lapsed in 2002 following his retirement from the Tucson Police Department.
16 (*Id.* at p. 6). Further, Stevenson was not on the Town's payroll as a peace officer when
17 Woods was arrested. (*Id.*). In conceding Woods' motion to vacate, the State concluded that
18 "Stevenson and the Patagonia Marshal's Office had misled the prosecutor's office by not
19 disclosing that Stevenson was not AZPOST certified on..." the date of Woods' arrest. (*Id.*
20 at p. 7). The Santa Cruz County Superior Court dismissed the aggravated assault charge with
21 prejudice, stating in pertinent part that: "sanctions are appropriate in this case due to the fact
22 that there was disservice to the victims in the case; that the integrity of the judicial system
23 was compromised with misleading and false statements...." (DSOF, Exh. 5, p. 2 (the court
24 also stated that "the case was tainted and...the integrity of this Court was compromised.")).
25      On September 9, 2010, the day after the court dismissed the Woods case, the Santa
26 Cruz County Attorney informed then-Town Manager Robert Hutchins that based upon the
27 court's findings and dismissal order, the County Attorney's Office would no longer work
28 with Dobbertin or the Patagonia Police Department, and Hutchins so informed Defendant

Mayor Richard Isaacson.[1]  (DSOF, Notice of Errata (Doc. 24), Exh. 6; PSOF, Exh. 2 (the County Attorney informed Hutchins he was forced to place Dobbertin on a "Brady List")).

At a September 15, 2010 special meeting, the Town Council passed a motion to instruct the Town Manager to draft charges to present to Dobbertin "resulting in a lack of confidence and trust based on what the Council perceives as: recent deterioration in his relations with the County Attorney's office and Superior Court damaging Chief Dobbertin's effectiveness as Chief law enforcement official." (DSOF, Exh. 7). Through September 24 and October, 1, 2010 letters, Hutchins advised Dobbertin as directed. (DSOF, Exhs. 9, 10 (identifying documents and statements influencing the Town's loss of confidence in Dobbertin)).  Hutchins further informed Dobbertin that the Council had scheduled a closed Executive Session, unless Dobbertin requested otherwise, to consider disciplinary action and to allow him "to present further information on the Alan Woods matter and explain to the Council why they should continue to have trust in you and your ability to manage the Town's police force." (DSOF, Exh. 9; *see also* DSOF Exh. 10). Dobbertin was permitted to have a representative present at the Executive Session. (DSOF, Exh. 10).

On October 6, 2010, the Council held an Executive Session where Dobbertin was given the opportunity to provide  his side of the story concerning the events in the Woods case. (DSOF Notice of Errata, (Doc. 24), ¶21 & Exh 6; PSOF, Exh. 2, ¶2). After voting, the Council directed Town Manager Hutchins to dismiss Dobbertin from employment. (DSOF, Exh. 11).  Hutchins was terminated on October 8, 2010 when he refused to follow the Council's directive, and on October 13, 2010, Defendant Interim Town Manager Isabel Van Nest sent Dobbertin a letter informing him of his immediate termination  and offering him a post-termination hearing if he wanted one. (DSOF, Exh. 12; PSOF, Exh. 2, ¶¶12-14). Upon Dobbertin's request, a post-termination hearing before Hearing Officer William E. Druke, a retired Arizona Appellate Court Judge, occurred on March 9, 2011, and resulted in the

---

[1]Defendant Isaacson's name is spelled differently in different documents.  For consistency, the Court uses the spelling set out in the Complaint.

- 4 -

1  finding that the Town had good cause to terminate Dobbertin. (DSOF, Exhs. 13, 15; DSOF, Exh. 4, pp. 76-77; PSOF, ¶8). At the hearing, Dobbertin was represented by counsel, presented testimony, and submitted evidence on his behalf. (DSOF, Exh. 4 at p. 76; DSOF Exh. 15).

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Summary judgment is appropriate when there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c)(2). The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record]...which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The nonmoving party's evidence is presumed true and all inferences are to be drawn in the light most favorable to that party. *Eisenberg v. Ins. Co. of North America*, 815 F.2d 1285, 1289 (9th Cir. 1987).

Only disputes over facts that might affect the outcome of the suit will preclude the entry of summary judgment, and the disputed evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). If the burden of persuasion at trial would be on the nonmoving party, the movant may carry its initial burden of production under Rule 56(c) by producing, "evidence negating an essential element of the nonmoving party's case," or by showing, after suitable discovery, that the "nonmoving party does not have enough evidence of an essential element of its claim or defense to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1105-1106 (9th Cir. 2000).

Defendants argue that Plaintiffs' state law claims are barred by the statute of limitations and, alternatively, that the claims fail as a matter of law. Defendants also argue that Plaintiffs' federal claims fail on the merits as well.

Plaintiffs concede that the wrongful termination claim "should be subsumed into the breach of contract claim and whether or not good cause existed for the termination....." (Response, p. 4). Plaintiffs also concede that "there is no viable claim for intentional

- 5 -

1 infliction of emotional distress." (*Id.* at p. 5). Plaintiffs also clarify that "the only Defendant against whom punitive damages should be recoverable is..." Defendant Patterson, for defamation. (*Id.* at p.6). Further, Plaintiffs do not intend to seek redress under §1981: "while § 1981 is mentioned, §1983 is the appropriate section mentioned in the complaint...." (*Id.* at p.5). What remains are: Plaintiffs' state law claims of breach of contract and defamation, in addition to Plaintiff's claims under 42 U.S.C. §1983.

**STATUTE OF LIMITATIONS**

On February 8, 2012, Plaintiffs filed a Notice of Claim, pursuant to ARS §§12-821, 12-821.01. (PSOF, Exh. 3). Plaintiffs filed this action in state court on August 17, 2012, and Defendants subsequently removed it to this Court. (PSOF, ¶11; Doc. 1).

**CLAIMS RELATING TO TERMINATION.** Defendants argue that Plaintiffs' state law claims are time-barred because they were filed after the one-year statute of limitations applicable to claims against public entities. A.R.S. §12-821; *see also* A.R.S. §12-541 (even as to private litigants, Arizona applies a one-year limitations period to claims of breach of contract and defamation). A cause of action accrues when the plaintiff realizes he or she has been damaged and knows or reasonably should know the cause of the damage. 12-821.01(B); *Dube v. Likins,* 216 Ariz. 406, 422, 167 P.3d 92, 103 (App. 2007). Defendants contend that the statute of limitations began to run on October 13, 2010 when the Town notified Dobbertin of its decision to terminate him, effective immediately. (MSJ, p. 6; *see also* DSOF, Exh. 12). Plaintiffs did not file the instant action until August 17, 2012. Therefore, Defendants argue that the remaining state claims asserting breach of contract and defamation are untimely.

Plaintiffs counter that they could not have filed a lawsuit until they had exhausted administrative remedies, which were not exhausted until Judge Druke issued his August 17, 2011 decision upholding Dobbertin's termination. Plaintiffs argue that the statute of limitations did not begin to run until August 17, 2011 and, thus, the Complaint was timely filed on August 17, 2012.

Under Arizona law, the limitations period is tolled during mandatory exhaustion of

- 6 -

administrative remedies. *See Brown v. Valoff*, 422 F.3d 926, 943 (9th Cir. 2005); *Arizona Dep't of Revenue v. Dougherty*, 29 P.3d 862 (Ariz. 2001); *Third & Catalina Assoc. v. City of Phoenix*, 895 P.2d 115, 119 (Ariz. Ct. App. 1994); *see also* Ariz. Rev. Stat. § 12-821.01(c) (cause of action required by law or contract to be submitted to administrative review process does not accrue until process exhausted)).

Defendants argue that there was no requirement that Dobbertin exhaust administrative remedies regarding his employment-related claims. (Reply, p.4). The parties do not cite to any Town Code provision, or other source, to support their respective positions. However, elsewhere in their brief, Defendants state: "it is undisputed that the Town did treat [Dobbertin] as a 'for cause' employee, in that he was allowed to challenge the decision to terminate him in an evidentiary hearing, *in accordance with the Town's policies* that applied to lower level employees who could only be dismissed for cause." (MSJ, p. 7) (emphasis added). Additionally, Dobbertin's February 8, 2012 Notice of Claim indicated that after his termination, he "requested further hearing pursuant to the Town's Administrative Code and Personnel Rules." (PSOF, Exh. 3, p.8). Although the record does not reflect what these policies are, the record suggests that had Dobbertin been considered an employee who could be terminated only for cause, as this Court has determined is the case, *see infra*, he would have been subject to exhaustion of administrative remedies, and thus the tolling provision applies to render Plaintiffs' suit timely filed. Moreover, in light of the Arizona statute tolling the statute of limitations provision during exhaustion of administrative remedies, this issue is distinguishable from *Delaware State College v. Ricks,* 449 U.S. 250 (1980) cited by Defendants where the Supreme Court held that the limitations period was not tolled during "the pendency of a grievance, or some other method of collateral review of an employment decision ...."

Additionally, the parties do not discuss equitable tolling. Arizona recognizes the doctrine of equitable tolling. *See McCloud v. State, Ariz. Dept. of Public Safety*, 217 Ariz. 82, 87, 170 P.3d 691, 697 (App. 2007) (citations omitted). Equitable tolling applies only in "extraordinary circumstances" and not to " 'a garden variety claim of excusable neglect.' "*Id.*

at 88, 170 P.3d at 697 (*quoting Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990)). "For example, courts have found extraordinary circumstances when there is a lack of clarity in the law, *Capital Tracing, Inc. v. United States,* 63 F.3d 859, 862–63 (9th Cir.1995)...." *McCloud,* 217 Ariz. at 87, 170 P. 3d at 696. This District Court has applied equitable tolling to the statute of limitations where prior to filing suit, a *pro se* plaintiff first appealed his termination from a state university pursuant to the university's policy. *Gorney v. Arizona Board of Regents,* 2013 WL 5348304, *6 ( D. Ariz. September 24, 2013). The *Gorney* court so held because of a lack of clarity in Arizona law regarding whether the use of the word "may" in the university's policy "renders those procedures permissive, and it was reasonable for the *pro se* Plaintiff to assume that he was required to complete the administrative review process...prior to filing a civil action." *Id.* On the instant record, where the parties were in dispute whether Dobbertin would be treated as an employee who could only be terminated for cause, the Court finds that under the doctrine of equitable tolling, Plaintiffs' action is timely filed as well.

**DEFAMATION.** As to Dobbertin's claim for defamation, Defendants argue that the claim is time-barred given that "he places all such comments during the period that he served as Town Marshal or shortly thereafter." (MSJ, p. 6). Other than asserting all their claims are timely, Plaintiffs do not specifically address the statute of limitations issue as it pertains to allegations of defamation. (*See* Response, pp. 2-3). When addressing the defamation claims on the merits, Plaintiffs discuss the issue only with regard to Defendant Patterson's alleged statements. (*See* Response, pp. 4-5). Thus, Plaintiffs neither establish the timeliness of, nor point to any genuine issue of material fact regarding, alleged defamatory statements made by Defendants Quiroga, Wood and Isaacson (Counts 5-7), and Defendants are entitled to summary judgment on such claims.

With regard to Defendant Patterson, Plaintiffs rely on statements allegedly made to Billy Cloud and Scott Hadfield. Plaintiffs assert that Defendant Patterson told Billy Cloud, a former Patagonia police officer who later became the Tombstone Marshal, "that there were allegations that Dobbertin was responsible for the theft of equipment and drugs, particularly

1    marijuana." (Response, p. 4). Plaintiffs also claim that Defendant Patterson made statements
2    to former Patagonia police officer Scott Hadfield accusing Dobbertin of numerous thefts.
3    (*Id.* ("Former officer Hadfield was told by Defendant Patterson that he suspected Dobbertin
4    of theft of a radar unit from the Town of Patagonia."[2])).  Plaintiffs allege in the Complaint
5    that after Dobbertin's termination, Defendant Patterson made false statements to AZPOST
6    and the Department of Public Safety that Dobbertin was responsible for lost or missing
7    equipment and drugs. (Complaint, ¶18).

8           The following analysis assumes, without deciding, that the alleged statements are
9    admissible.  Plaintiffs submit Billy Cloud's affidavit reflecting that:  Cloud was appointed
10   Acting Chief of Police for the Town from October 27, 2010, after Dobbertin's termination,
11   until March 17, 2011; and Defendant Patterson was appointed chief on March 27, 2011.
12   (PSOF, Exh. 4, ¶¶2, 26). "[D]uring the transition period, Chief Patterson had asked [Cloud]
13   about missing firearms, equipment, and evidence/marijuana from the Police Department."
14   (*Id.* at ¶27).  Also, "during the transition period..." Cloud met with Defendant Patterson and
15   Mrs. Patterson who both "made statements to him regarding an 'investigation' being
16   conducted by the Santa Cruz County Attorney's Office and [ATF]..."and that Cloud and
17   "Dobbertin would be required to answer questions about the missing equipment, evidence,
18   and firearms."  (*Id.* at ¶30).  On some unspecified date, presumably after Cloud left
19   employment in Patagonia on March 17, 2011, and became Chief Marshal for the City of
20   Tombstone, Cloud asked Dobbertin to apply with his office and fully intended to hire him.
21   (*Id.* at ¶32).  When conducting the required background check with AZPOST, Cloud was
22   informed that "AZPOST would have issues with what had transpired at Patagonia and the
23   missing equipment, firearms, and marijuana.  That AZPOST would require additional
24   polygraph scrutiny of Chief Dobbertin's background." (*Id.* at ¶33).

25          When Dobbertin indicated at his deposition that Cloud told him in 2011 about

---

27         [2]However, Hadfield's affidavit reflects that Lt. Miller told Hadfield that Defendant
     Patterson had said that "Dobbertin had stolen numerous items from the Patagonia Police
28   Department."  (PSOF, Exh. 8, ¶12).

- 9 -

1  Defendant Patterson's allegedly defamatory comments, he was asked: "Spring? Early
2  summer? ...." (DSOF, Ex. 4, p. 64). Dobbertin responded: "It was all during this time when
3  Patterson had just taken over." (*Id.*). Defendant Patterson was appointed on March 27, 2011.
4  (PSOF, Exh. 4, ¶26). With regard to comments made to Cloud, Dobbertin does not present
5  any evidence as to when he realized he had been damaged and knew the source which caused
6  or contributed to the damage. *See* A.R.S. §12-821.01. The Complaint was filed on August
7  17, 2012. Any claims relying on information received from Cloud are untimely.

8  Hadfield's affidavit reflects that during "September-October 2011" Defendant
9  Patterson allegedly made defamatory comments about Dobbertin to Lt. Miller, who relayed
10 them to Hadfield. (PSOF, Exh. 8, ¶¶7-12)). Defendants cite Dobbertin's deposition
11 testimony to support their position that the comments were made earlier in 2011: when
12 Dobbertin was asked when Hadfield told him about Defendant Patterson's alleged comments,
13 Dobbertin testified "it was after he [presumably Patterson] took over...I would have to check
14 with what the exact was [sic]. But I want to say it was spring or early summer of 2011."
15 (DSOF, Exh. 4, p. 64). Plaintiffs' Complaint was filed in August 2012. Defendants'
16 reliance on Dobbertin's testimony is unpersuasive because Dobbertin qualified that he would
17 have to check the date to be certain, and Hadfield's affidavit indicates the statements were
18 made in September-October 2011. Because the Complaint was filed within one year of the
19 comments, it follows that if the comments are actionable, then they are timely.

20 **BREACH OF CONTRACT CLAIM**

21 Defendants argue that Plaintiffs' breach of contract claim has no basis in law and fact
22 because: (1) the contract is void as against public policy; and (2) Dobbertin received the
23 benefit of the bargain for which he negotiated.

24 Under Town Code §3-1-1, the Town Marshal is appointed by the Council and serves
25 "at the pleasure of the [C]ouncil." (DSOF, Ex. 1). There is no question that in October 2006,
26 Dobbertin was offered "at will" employment and that he successfully negotiated, among
27 other things, that he would "not be considered an 'at will' employee and may only be
28 terminated for stated cause", as reflected in the Town's October 31, 2006 "Response to

- 10 -

1  Conditional Offer of Employment/Final Offer of Employment." (PSOF, Exh.1, pp. 4-5; *see
2  also* PSOF, Exh. 1, pp. 1-3).

3  Defendants cite Arizona case law for the premise that "while a political entity can
4  ordinarily enter into contracts extending beyond the political life of the entity's governing
5  board, it cannot do so where the contract is for personal or professional services for the board
6  itself....[P]ublicly elected officials must have the freedom to appoint those high level
7  executive and administrative officers on which the success of a political policy must rest."
8  *Serna v. Pima County,* 185 Ariz. 380, 381, 916 P.2d 1096, 1087 (App. 1995) (contract with
9  county manager did not extend beyond the political life of the governing board); *see also*
10 *Tryon v. Avra Valley Fire District,* 659 F.Supp. 283 (D.Ariz. 1986) (prior board could not
11 bind the successor board that voted to terminate fire chief).

12 Code §3-2-2 clearly authorizes the Council to "enter[] into a contract of employment
13 with the marshal, in which event the marshal may be removed only in accordance with the
14 terms of such contract and for good cause." (DSOF, Exh. 2). If Defendants' position
15 prevails, then the Code is in violation of public policy. The cases cited by Defendants
16 address a successor governing body's obligations under a "contract" entered by a previous
17 governing body. The Arizona case first enunciating the principle relied upon by Defendants
18 also recognized that the employee, having been appointed by the council, "was subject to be
19 removed by the council at its pleasure, *unless the council, in appointing him, had the power*
20 *to contract with him and bind the town to retain him a specified term.*" *Town of Tempe v.*
21 *Corbell,* 17 Ariz. 1, 10, 147 P. 745, 748 (1915) (emphasis added); *see also Olmstead &*
22 *Gillelen v. Hesla,* 24 Ariz. 546, 551, 211 P. 589, 590 (1922) ("It must be borne in mind that
23 the commission is a creature of the statute, created for a special purpose, with limited powers,
24 and that it can exercise no powers not expressly or impliedly granted, and especially no
25 powers expressly or impliedly forbidden."). The *Corbell* court determined that appointment
26 of the employee to a specified term was not provided for in the act governing appointment.
27 *Id.* (finding contract void as against public policy where the council, composed of the
28 outgoing members, placed the matter of employee's employment beyond the control of the

1 corporation). The Arizona Supreme Court went on to state: "The rule is that where the power 2 of appointment is conferred in general terms, and without restriction, the power of removal 3 in the discretion and at the will of the appointing power is implied, and always exists, *unless* 4 *restrained and limited by some other provision of law....*" *Id.* at 11, 147 P. at 749 (internal 5 quotation and citation omitted) (emphasis in original). Neither *Serna* nor *Tyron* involved 6 allegations that the respective governing bodies had authority to do more than appoint the 7 employees and terminate them at will. Here, the Code expressly authorized the Council to 8 contract to terminate the town marshal for cause.[3] Plaintiffs' case is distinguishable from the 9 cases relied upon by Defendants. The contract at issue is not void as against public policy.

10 Defendants also argue that even if the Court disagrees with their position that any 11 contract with Dobbertin is void, "it is undisputed that the Town did treat [Dobbertin] as a 'for 12 cause' employee, in that he was allowed to challenge the decision to terminate him in an 13 evidentiary hearing, in accordance with the Town's policies that applied to lower level 14 employees who could only be dismissed for cause." (MSJ, p. 7). According to Defendants, 15 "an employee's contractual rights apply not only to the substantive provisions of an 16 agreement but also the procedural remedies provided to him." (*Id.* at p. 8). Defendants' 17 argument is well taken.

18 Further, Defendants also point out that "the material, undisputed evidence here 19 demonstrates as a matter of law that the Town had good cause to replace..." Dobbertin. 20 (MSJ, p. 8). Defendants rely upon Judge Druke's opinion that "the Council had cause to 21 terminate Dobbertin as Town Marshal either because he was unfit or unable "'to perform the

---

[3] In light of the Code § 3-2-2, Judge Druke, in his post-termination decision, declined to apply Arizona's "longstanding rule that contracts for personal or professional services for a political entity's governing board cannot extend beyond the governing board's political life." (DSOF, Exh. 15, p. 9). Judge Druke found that the Code required "cause" for Dobbertin's termination as Town Marshal in light of the contract between Dobbertin and the Town. (*Id.*) ("[N]ot only did Section 3-2-2 itself require 'cause' for Dobbertin's termination as Town Marshal but,...Dobbertin's contract with the Town also required 'cause' to terminate his employment.")

- 12 -

1 duty imposed upon him,' *Farish* [*v. Young,* 18 Ariz. [298]... 302, 158 P. [845]...847
2 [(1916)], or because, as Dobbertin put it in his letter to the Council on October 19, 2006, he
3 was 'not doing what [he] was supposed to be doing.'" (DSOF, Exh. 15, p. 17; *see also* MSJ,
4 pp. 3-4 (*citing* DSOF, ¶¶25-26 (*citing* DSOF, Exh. 15)).  Plaintiffs, other than stating "that
5 good cause is a fact in dispute",  do not address Defendants' argument in their Response.
6 (*See* Response, pp. 3-4).  Plaintiffs do allege in their Complaint that Defendants breached
7 Dobbertin's employment contract by terminating him without good cause "and without any
8 showing of actual misconduct by..." Dobbertin. (Complaint, ¶31).  Plaintiffs' Statement of
9 Facts suggests Plaintiffs' position that certain Defendant council members wanted to
10 terminate Dobbertin before the Woods case occurred.  However, the record is clear that
11 Dobbertin was not terminated until *after* the Woods incident.  Plaintiffs have failed to cite
12 any evidence that would create a question of material fact on their breach of contract claim.
13 *See* LRCiv 56.1(c) ("Memoranda of law filed in support of or in opposition to a motion for
14 summary judgment...must include citations to the specific paragraph in the statement of facts
15 that supports assertions made in the memoranda regarding any material fact on which the
16 party relies in support of or in opposition to the motion.").  Defendants are entitled to
17 summary judgment on this issue.
18 **DEFAMATION CLAIM**
19    To prevail on a defamation claim, Plaintiffs must prove: (1) a false statement
20 concerning Dobbertin; (2) the statement was defamatory; (3) the statement was published to
21 a third party; (4) requisite fault on the part of the defendant; and (5) damage as a result of the
22 statement.  *Harris v. Warner,* 160 Ariz. 55, 62 (App. 1988).  Defendants contend, and
23 Plaintiffs do not dispute, that because Dobbertin is a public figure and allegations that the
24 Town Marshal may have engaged in improper conduct is a matter of public concern,
25 Dobbertin has the burden of proving that the alleged statements were false.  *See Turner v.*
26 *Devlin,* 174 Ariz. 201, 290, 848 P.2d 286, 205 (1993).  Nor do Plaintiffs disagree with
27 Defendants' contention that as a public figure, Dobbertin may recover damages only upon
28 proof of actual malice.  *Heuisler v. Phoenix Newspapers, Inc.,* 168 Ariz. 278, 282, n.1,812

P.2d 1096, 1100 n.1 (App. 1991); *Carboun v. City of Chandler,* 2005 WL 2408294, *8, (D. Ariz. Sept. 27, 2005); *see also* (Response, pp. 4-5).

The only defamation claim that is timely involves statements made to Hadfield. Hadfield's affidavit reflects that Defendant Patterson accused *Hadfield,* not Dobbertin, of stealing a radar unit. (PSOF, Exh. 8, ¶¶ 8, 9). Although Hadfield states that during a phone conversation with Defendant Patterson, Defendant Patterson questioned him about numerous items Defendant Patterson believed to be missing from the Patagonia Police Department, Hadfield does not state that Defendant Patterson specifically mentioned Dobbertin in connection with the missing items. (*Id.* at ¶¶ 9,10).  Further, as Defendants point out, according to Hadfield's affidavit:  it was Lt. Miller who told Hadfield that Defendant Patterson said Dobbertin had stolen numerous items from the Patagonia Police Department. (*Id.* at ¶12).  Plaintiffs argue that the hearsay statement establishes publication and that Defendants could have deposed the witnesses but did not.  (Response, p. 5).  Defendants persuasively counter that "there is no evidence at all that anything said to Hadfield, even as hearsay, caused [Dobbertin] to suffer damages, a necessary element of a defamation claim." (Reply, p. 5)

In their Statement of Facts, Plaintiffs state that due to "defamation/slander" particularly by Defendant Patterson, Dobbertin "lost many different job opportunities." (PSOF, ¶29 (*citing* DSOF, Exh. 4, pp. 90-92)).  Dobbertin testified at his deposition that he was denied employment as a litigation support consulting expert witness and "[b]eing able to conduct any kind of investigation, especially where the investigator's credibility or integrity would come into question, which would be just about any investigation." (DSOF, Exh. 4, p. 92).  Dobbertin does not link denial of such jobs to any alleged statements to Hadfield or Lt. Miller. Consequently, Defendants are entitled to summary judgment on this issue.

**PUNITIVE DAMAGES**

Plaintiffs contend, without citing authority, that punitive damages should be recoverable against Defendant Patterson who made defamatory statements about Dobbertin.

- 14 -

(Response, p. 6). On the instant record, there is no genuine issue of material fact as to Defendant Patterson's alleged defamatory statements and, therefore, any claim of punitive damages based on such a claim fails as well.

**FEDERAL CLAIM UNDER 42 U.S.C. § 1983**

Plaintiffs allege that Defendants, acting under color of state law, deprived Dobbertin of his property and liberty interests without due process of law. (Complaint, ¶24). However, Plaintiffs provide no argument showing why or how Dobbertin's right to due process was violated.

"The [F]ourteenth [A]mendment's guarantee of due process applies when a constitutionally protected liberty or property interest is at stake." *Matthews v. Harney County, Or., School Dist. No. 4,* 819 F.2d 889, 893 (9th Cir. 1987) (*citing Board of Regents v. Roth,* 408 U.S. 564, 569 (1972)). "In evaluating defendants' motion for summary judgment on the procedural due process claim, the question is not whether defendants ultimately reached the correct decision, but whether plaintiffs have shown evidence from which a trier of fact could conclude that plaintiffs were not afforded the process required by law." *Montoya v. Giusto,* 2004 WL 3030104, *15 (D. Or. Nov. 24, 2004).

**PROPERTY INTEREST.** "An interest in property arises only when there is a legitimate claim of entitlement...." *Vanelli v. Reynolds School District No. 7,* 667 F.2d 773, 777 (9th Cir. 1982). Protected property interests in employment may arise from contract. *See Telford v. Clackamas County Housing Auth.,* 710 F.2d 567, 569 (9th Cir. 1983). The type of process due is a question of federal law. *Cleveland Board of Educ. v. Loudermill,* 470 U.S. 532, 540-41 (1985). Based on this Court's decision, *supra,* this discussion assumes that Dobbertin had a viable contract for employment specifying that he could only be terminated "for cause" and, thus, he had a property right in continued employment of which he could not be deprived without due process. *See Loudermill,* 470 U.S. 532 (where statute provided that public employees could not be dismissed except for cause, employees had a property interest in continued employment).

"In *Loudermill,* the Supreme Court held that even when state law provides for a full

1 post termination hearing, due process requires 'some kind of hearing' in advance of
2 termination." *Matthews,* 819 F.2d at 892. The "'employee is entitled to oral or written
3 notice of the charges against him, an explanation of the employer's evidence, and an
4 opportunity to present his side of the story.'" *Id.* (*quoting Loudermill,* 470 U.S. at 546). On
5 the issue of notice, the Ninth Circuit reads *Loudermill* to require in advance of any pre-
6 termination hearing: (1) notice to the employee as to the pendency of contemplation of a
7 dismissal action; and (2) notice as to the charges and evidence which give rise to that
8 concern. *Id.*

9 In a September 24, 2010 letter, Town Manager Hutchins informed Dobbertin about
10 the Council's "loss of confidence in your ability to effectively manage the Patagonia Police
11 Department...." and that the Council had scheduled a Special Meeting to consider
12 disciplinary action against him. (DSOF, Ex. 9). Hutchins also identified documents and
13 other information that influenced the Council's loss of confidence in Dobbertin. (*Id.*). These
14 documents pertained to the Woods criminal matter. (*Id.* (citing court documents, newspaper
15 articles, conversation between Town Manager and the County Attorney)); *see also* DSOF,
16 Exh. 10 (identifying additional information)). Dobbertin was advised that the meeting would
17 be closed unless he requested otherwise, and that he would be allowed "to present further
18 information on the Alan Woods matter and explain to the Council why they should continue
19 to have trust in your and your ability to manage the Town's police force." (DSOF, Exh. 9).
20 Dobbertin appeared for the Special Meeting accompanied by his chosen representative,
21 Patagonia Deputy Marshal John Grady. (DSOF, Notice of Errata (Doc. 24), Exh 6, ¶6).

22 The pre-termination hearing need not be a full adversarial hearing, but must afford the
23 employee a meaningful opportunity to speak in his own defense. *Matthews,* 819 F.2d at 893.
24 On October 6, 2010, the Council held an Executive Session where Dobbertin was given the
25 opportunity to provide his side of the story concerning the events in the Woods case. (PSOF,
26 Exh. 2, ¶12; DSOF, Exh. 11; DSOF Notice of Errata (Doc. 24), ¶21 & Exh. 6). No questions
27 were asked of Dobbertin. (PSOF, Exh. 2, ¶12). The Council voted and directed Hutchins to
28 dismiss Dobbertin from employment. (DSOF, Exh. 11). Thereafter, by letter dated October

- 16 -

1  13, 2010, Dobbertin was notified of his immediate termination and of the availability of a
2  post-termination hearing if he wanted one.[4] (DSOF, Exh. 12). Upon Dobbertin's request, a
3  post-termination hearing occurred before Judge Druke on March 9, 2011, and resulted in the
4  finding that the Town had good cause to terminate Dobbertin. (DSOF, Exh. 15; PSOF, ¶8).
5  At the hearing before Judge Druke, Dobbertin was represented by counsel, presented
6  testimony, and submitted evidence on his behalf. (DSOF, Exh. 4 at p. 76; DSOF Exh. 15).
7  Dobbertin had no problem with the way Judge Druke conducted the hearing, nor did he
8  believe that Judge Druke was biased against him. (DSOF, Exh. 4, pp. 79-80).

9  Plaintiffs provide no reason whatsoever why they believe Dobbertin was denied due
10 process. Review of Plaintiffs' Statement of Facts suggests that Plaintiffs attempted to present
11 evidence that Defendant Town Council members Quiroga, Wood, and Isaacson were biased
12 against Dobbertin and wanted to terminate him before the Woods' matter occurred.
13 However, to establish bias, Plaintiffs would have show to that the adjudicators had an actual
14 personal or financial stake in the action. *See Vanelli,* 667 F.2d at 780-81 & n.13, which is
15 not alleged here. Moreover, Ninth Circuit law is clear that:

> A pre-termination hearing involves only notice and an opportunity to respond, and does not constitute an "adjudication." Thus, the decisionmaker in a pre-termination hearing need not be impartial, so long as an impartial decisionmaker is provided at the post-termination hearing.

*Clements v. Airport Authority of Washoe County,* 69 F.3d 321, 333, n.15 (9th Cir. 1995) (*citing Walker v. City of Berkeley,* 951 F.2d 182, 184 (9th Cir. 1995)). Dobbertin does not allege any bias on the part of Judge Druke during the post-termination hearing and has

---

[4]The letter from Defendant Isabel Van Nest, then Interim Town Manager, stated: [B]ecause those charges [leading to Dobbertin's termination] may have already been or may in the future be publicly disclosed, if you disagree about the accuracy of those charges, the Town will provide you with a public hearing to present your own statements, witnesses and evidence This is not an acknowledgment that the letters are stigmatizing, nor would such a hearing be a process to change the Council's prior decision. In fact, there would be no requirement for this to occur as part of a Council meeting. It is merely to give you an opportunity to publicly state and present your side as you see fit. (DSOF, Exh. 12).

- 17 -

testified that he did not believe Judge Druke was biased against him. (DSOF, Exh. 4, pp. 79-80). Plaintiffs have not presented evidence creating a question of material fact as to whether he was deprived of a property interest in his continued employment.

**LIBERTY INTEREST.** A public employee's liberty interest is implicated if a charge impairs his reputation for honesty or morality. *Vanelli,* 667 F.2d at 777. "The procedural protections of due process apply if the accuracy of the charge is contested, there is some public disclosure of the charge, and it is made in connection with the termination of employment...." *Id.* at 778 (citations and footnote omitted). "There is a strong presumption that a public employee is entitled to some form of notice and opportunity to be heard before being deprived of a liberty or property interest." *Id.,* at 778; *see also id.* at 779 (suggesting that an "emergency situation" might justify immediate dismissal without a pre-termination hearing). In cases of stigmatization where a liberty interest is implicated, "the remedy mandated by the Due Process Clause of the Fourteenth Amendment is an 'opportunity to refute the charge.'" *Codd v. Velger,* 429 U.S. 624, 627 (1977) (*quoting Roth,* 408 U.S. at 573). Plaintiffs allege that after Dobbertin's termination, the "Town's Mayor and Council members made public statements attempting to justify Plaintiff's termination...", which Dobbertin contends were false. (Complaint, ¶17). The Interim Town Manager's October 13, 2010 letter offered Dobbertin a hearing to address any charges which may have become public that he felt were inaccurate. (DSOF, Exh. 12).

Dobbertin received a hearing before Judge Druke. Plaintiffs present no evidence or argument to question the fairness of that proceeding. Plaintiffs have not presented any evidence creating a genuine issue of material fact as to a constitutional violation on this issue. Because Plaintiffs have failed to point to evidence creating a genuine issue of material fact regarding their claims of constitutional violations, Defendants are entitled to summary judgement on Plaintiff's federal claims.

**CONCLUSION**

Plaintiffs have conceded the following claims should be dismissed: wrongful termination, intentional infliction of emotional distress, violation of 42 U.S.C. § 1981, and

1  punitive damages except as against Defendant Patterson. Additionally, because Plaintiffs
2  have not pointed to evidence creating a genuine issue of material fact on their claims of
3  breach of contract, defamation, punitive damages against Defendant Patterson, and violation
4  of 42 U.S.C. § 1983, Defendants are entitled to summary judgment.
5  Accordingly,
6      IT IS ORDERED that Defendants' Motion for Summary Judgment (Doc. 22) is
7  GRANTED.
8      The Clerk of Court is DIRECTED to enter judgment accordingly and close its file in
9  this matter.
10     DATED this 10th day of April, 2014.

*(signature)*

**CHARLES R. PYLE**
UNITED STATES MAGISTRATE JUDGE